United States District Court
Middle District of Florida
Jacksonville Division

**LORINDA F. MOORE,**

    *Plaintiff,*

v.                                                                                    **NO. 3:19-cv-1174-PDB**

**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

# Order

Lorinda Moore, proceeding without a lawyer, brings this action under 42 U.S.C. § 405(g) to review a final decision of the Acting Commissioner of Social Security denying her application for disability insurance benefits (DIB). Under review is a decision by an Administrative Law Judge (ALJ) dated November 29, 2018. Tr. 7–21.

A court's review of a decision by the Commissioner is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

"[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). If "remand would be an idle and useless formality," a reviewing court need not "convert judicial review of agency action into a ping-pong game." *N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969).

A court will liberally construe a brief by a pro se litigant. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Still, a court will consider abandoned an issue not raised and will not serve as de facto counsel. *Bilal v. Geo Care, LLC*, 981 F.3d 903, 909 n.6, 911 (11th Cir. 2020).

To obtain benefits, a claimant must demonstrate she is disabled. 20 C.F.R. § 404.1512(a). A claimant is disabled if she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To decide whether a person is disabled, the Social Security Administration (SSA) uses a five-step sequential process, asking whether (1) she is engaged in "substantial gainful activity";[1] (2) she has a severe impairment or combination of impairments, (3) the impairment meets or equals the severity of anything in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App'x 1;[2] (4) she can perform any of her "past relevant work"[3]

---

[1] "Substantial gainful activity" is "work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. "Substantial work activity is work activity that involves doing significant physical or mental activities." *Id.* "Gainful work activity" is work done "for pay or profit." *Id.*

[2] In the Listing of Impairments, "for each of the major body systems," the SSA describes "impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). The Listing of Impairments is structured to match the definition of "disability," which "includes two limiting elements: a definition of impairment and a severity requirement." *Randall v. Astrue*, 570 F.3d 651, 657 (5th Cir. 2009) (citing 42 U.S.C. § 423(d)(1)(A)). If a claimant meets or equals an impairment in the Listing of Impairments, she is "conclusively presumed to be disabled and entitled to benefits." *Bowen v. City of New York*, 476 U.S. 467, 471 (1986).

[3] "Past relevant work" is "work [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough … to learn to do it." 20 C.F.R. § 404.1560.

considering her "residual functional capacity" (RFC);[4] and (5) a significant number of jobs in the national economy that she can perform considering her RFC, age, education, and work experience exist. 20 C.F.R. § 404.1520(a)(4). If the SSA finds disability or no disability at a step, the SSA will "not go on to the next step." 20 C.F.R. § 404.1520(a)(4). The claimant has the burden of persuasion through step four. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Moore previously applied for benefits. In an application filed in January 2013, she claimed disability beginning in May 2010. Tr. 116. An ALJ found she was not disabled from May 3, 2010, through February 25, 2015. Tr. 125–26. The Appeals Council denied review, Tr. 132–37, and this Court affirmed.[5] Tr. 165–74.

Moore filed her latest application in June 2016, claiming disability beginning in November 2010. Tr. 234–37, 256. The ALJ ruled, "[T]he earliest date of disability that can be considered is February 26, 2015, the day after the prior unfavorable decision by the [ALJ]." Tr. 10. The ALJ also ruled, "[T]he period at issue is a very short period[.] It's February 26th, 2015 to March 31, 2015." Tr. 66; *see also* Tr. 12. Counsel then-representing Moore agreed. Tr. 66; *see also* Tr. 138 (record stating the date last insured is March 31, 2015).

---

[4]A claimant's RFC is the most she can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The RFC is used to decide if the claimant could perform past relevant work and, if not, to decide if there were other jobs in significant numbers in the national economy she could perform. *Id.* § 404.1545(a)(5). The "mere existence" of an impairment does not reveal its effect on a claimant's ability to work or undermine RFC findings. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

[5]In her brief, Moore references her first application and complains her lawyer at the time suggested the ALJ would find her disabled if she agreed to accept no back pay, which she felt was unfair. Doc. 22 at 1. Because Moore had an opportunity to raise this issue in her first appeal, the Court does not consider it here. To the extent her complaint applies to the current proceedings, she provides insufficient information or briefing to address the issue.

3

The ALJ applied the five-step process for this period. Tr. 12–16. At step one, he found Moore had not engaged in substantial gainful activity. Tr. 12. At step two, he found she had suffered from severe impairments of morbid obesity and osteoarthritis in both knees. Tr. 12. At step three, he found she had not had an impairment or combination of impairments meeting or medically equaling the severity of any listed impairment. Tr. 13. He then found she had possessed the RFC to perform less than a full range of sedentary work:

> Specifically, the claimant was able to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently. The claimant could sit (with normal breaks) for a total of about 6 hours in an 8-hour workday, and stand and/or walk (with normal breaks) for a total of about 2 hours in an 8-hour workday (with the need for a cane when ambulating only). The claimant could occasionally engage in the operation of bilateral foot controls (with no resistance greater than 10 pounds), climb ramps and stairs, balance and stoop, but never climb ladders or scaffolds, kneel, crouch, crawl, work at unprotected heights, work with dangerous moving mechanical parts, or work on vibrating work surfaces. The claimant was able to tolerate up to only occasional exposure to extreme cold and humidity/wetness.

Tr. 13. At step four, he found she could have performed her past relevant work as a service monitor.[6] Tr. 15. He thus stopped there and found no disability. Tr. 16.

In assessing the RFC, the ALJ cited Exhibit C5A (SSA's initial determination) and Exhibit C8A (SSA's reconsideration determination) and

---

[6] A service monitor "[m]onitors telephone conversations or telegraph messages between operators, business office employees, and subscribers to observe employees' demeanor, technical accuracy, and conformity to company policies. Plugs headphones into switchboard, listens to conversations, and records errors. Submits lists of errors to supervisors for remedial action." U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. 1991), § 239.367-026, 1991 WL 672228..

4

stated he "considered the assessments of State agency consultants that the claimant was limited to a range of light work but g[ave] this only some weight, as evidence, when considering the claimant's testimony regarding her functioning at the time, supports she was more limited to a range of sedentary." Tr. 15.

The initial determination at Exhibit C5A is titled, "This Disability Determination Explanation is for the DIB claim at the Initial Level." Tr. 138; *see also* Tr. 147 (explanation of determination explaining the claim type is "DIB"). The determination specifies the date last insured as March 31, 2015. Tr. 138, 143. A single decisionmaker determined no disability, explaining the evidence was insufficient to evaluate the claim. Tr. 144.

The reconsideration determination at Exhibit C8A is titled, "This Disability Determination Explanation is for the DI claim at the Reconsideration Level." Tr. 148. The reconsideration determination specifies no date last insured. *See generally* Tr. 148, 156. The state agency consultant—Lauren Bridge, M.D.—opined that Moore's asserted pain was partially consistent with the "total medical and non-medical evidence in the file"; Moore could occasionally lift or carry 20 pounds, could frequently lift or carry 10 pounds, could stand or walk for two hours, could sit for about six hours in an eight-hour workday; had a limited ability to push and pull; had postural limitations; could only occasionally climb ramps and stairs; could only occasionally balance, crouch, crawl, kneel, and stoop; could never climb ladders, ropes, and scaffolds; and had no manipulative, visual, communicative, or environmental limitations. Tr. 157–58.[7]

---

[7]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very

5

Dr. Bridge also opined Moore could not sustain a 40-hour workweek, explaining,

> [Claimant] with good [range of motion] of [lower extremities] however has significant pain complaints that are consistent with objective evidence on x[-]rays. [Claimant] on strong pain medications which have significant side effects. The combination of her obesity and [orthopedic arthritis] would make her unable to sustain a 40[-hour] work week secondary to pain.

Tr. 158, 160.

A disability examiner then determined Moore is "Disabled." Tr. 161; *see* POMS, DI 24501.001B, https://secure.ssa.gov/poms.nsf/lnx/0424501001 (explaining disability examiners evaluate vocational aspects of the case). Under "Enter the established onset date," the examiner stated, "06/28/2016," Tr. 161, which is the application date, Tr. 10, and outside the pertinent period (February 26 to March 31, 2015). The Explanation of Determination (Exhibit C10A) at the reconsideration level states Moore was *not* disabled through her date last insured. Tr. 164.

In March 2021, the Court stayed the case and summarized two issues about Dr. Bridge's opinions that Moore had not raised:

> (1) whether the state agency consultant who determined "Disabled" at the reconsideration level considered the wrong period in the mistaken belief … Moore was applying for supplemental security income and, if so, whether the error requires reversal for failure to meaningfully provide the first step in the administrative review process; and (2) relatedly, beyond the ALJ's erroneous statement that the single decisionmaker's determination was by a state agency consultant,

---

little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

> whether the ALJ properly assessed the state agency consultant's opinion.

Doc. 24 at 3. The Court directed the Acting Commissioner to move to remand or provide supplemental briefing on the issues and whether the interests of justice require their consideration. Doc. 24 at 3.

The Acting Commissioner filed a supplemental brief arguing (1) the interests of justice do not require consideration of the issues, (2) whether Dr. Bridge made a proper determination is beyond judicial review, and (3) any error by the ALJ in considering Dr. Bridge's opinions was harmless. Doc. 25.

The Court allowed Moore to reply to the supplemental brief. Doc. 26. Moore replied but failed to address the issues. Doc. 27.

To the extent the ALJ erred in considering Dr. Bridge's opinions, Moore abandoned the issue by not raising it. In the scheduling order, the Court explained that it would consider abandoned any issue Moore fails to "raise or fully brief (i.e. provide more than just a summary contention) unless the interests of justice require its consideration." Doc. 16.

Even if the interests of justice require consideration of the abandoned issue, any error was harmless. For benefits, a claimant must show disability before the date last insured. *Moore v. Barnhart*, 405 F.3d 1208, 1210 (11th Cir. 2005). Based on Dr. Bridge's focus on 2016 x-rays and other evidence post-dating the date last insured, her opinion that Moore could not sustain a 40-hour workweek evidently concerned Moore's condition after the date last insured. *See* Tr. 158, 160. Likewise, the disability examiner determined her disability started in June 2016—*after* the date last insured.

Turning to the arguments Moore makes in her brief, she contends she had bariatric surgery and knee replacement surgery in 2019 and 2020, she has three discs "sticking out" of her lower back, and she needs back and hip surgeries. Doc. 22 at 2. The surgeries are years after the pertinent period (February 26, 2015, through March 31, 2015), and Moore fails to show how they relate to the pertinent period.

Moore complains that the unfavorable decision was based on a finding that she did not look like anything was wrong with her. Doc. 22 at 1. She asks, "[H]ow can an individual tell how a person is feeling [due] to their looks[?]" Doc. 22 at 1. The ALJ based his decision not on Moore's appearance but on his application of the five-step sequential process, which included findings based on her medical history, her medical records, her own reports, and the absence of work-related restrictions. *See* Tr. 13–16.

Substantial evidence supports those findings. In assessing the RFC, the ALJ considered Moore's obesity and accepted that it "would erode [her] functioning when combined with her knee impairment[.]" *See* Tr 14. He considered her history of osteoarthritis in both knees and that she had engaged in physical therapy for years before the pertinent period. *See* Tr. 14. He considered medical records during and immediately surrounding the pertinent period showing use of a cane and complaints of joint, back, knee, and hip pain, but no joint swelling; normal gait and station with a cane; no spinal deformity; good muscle tone and strength; normal neck and back range of motion; normal musculoskeletal range of motion; normal coordination and balance; no motor deficits; pain relief from medication; and no suggested treatment beyond pain medication ("such as physical therapy, injections, or surgical consultations"). *See* Tr. 14; *see also* Tr. 366, 369, 429–31, 435, 437, 441. He considered her

8

testimony that she lived alone, cared for her personal needs, made her bed, did her laundry, shopped, wrote and read, followed television shows, managed her money, attended church two or three times a week, and "even babysat her three- and four-year old grandchildren on a monthly basis." *See* Tr. 15; *see also* Tr. 69, 78–81. And he considered that no medical opinion stated work-related restrictions. *See* Tr. 15. In finding she could have performed her past relevant work as a service monitor, he relied on a vocational expert's testimony about the job and Moore's testimony that when she had worked, she did not have to lift anything and had walked minimally. *See* Tr. 15–16; *see also* Tr. 84–85, 88.

To the extent Moore asks this Court to reconsider her "case," Doc. 22 at 2, the Court is without authority to do so. Congress has limited a court's review of a final decision of the Commissioner. A court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Moore*, 405 F.3d at 1211.

Because Moore has abandoned any issue involving Dr. Bridge's opinions, any error was harmless, and substantial evidence supports the ALJ's decision, the Court **affirms** the Acting Commissioner's decision and **directs** the clerk to enter judgment for the Acting Commissioner and against Lorinda Moore and **close** the file.

**Ordered** in Jacksonville, Florida, on December 9, 2021.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

9

c:      Counsel of record (via CM/ECF)

       Lorinda Moore (via USPS)
       1605 North Myrtle Avenue, Apartment 24
       Jacksonville, FL 32209